UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
OCT 2 6 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-621-GWU

PAUL HUBBARD,                                              PLAINTIFF,

VS:                  MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT,

## INTRODUCTION

Paul Hubbard brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

     the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

     6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

     7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

4

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Hubbard, a 43-year-old former truck driver with a "marginal" education, suffered from impairments related to edema of the left lower extremity (post cellulitis), obstructive pulmonary disease, a depressive disorder and borderline intelligence. (Tr. 12, 15). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of sedentary level work. (Tr. 20-21). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 21). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Susan Kehoe included a person of Hubbard's age, marginal education (with a fifth

5

grade reading level), and work history restricted to sedentary level work along with such non-exertional limitations as (1) a need to avoid environmental exposures, such as exposure to weather, dust, odors, fumes, and changes in humidity or heat; (2) a restriction to simple or slightly more complex instructions or tasks; (3) a need to avoid complicated or sophisticated work assignments; and (4) a "limited" ability to deal with the public. (Tr. 219-221). In response, the witness identified a significant number of jobs in the national economy which could still be performed. The ALJ later incorporated by reference into the question (Tr. 222) the mental restrictions identified by Psychologist Gary Maryman in Exhibit 10F, which included a "poor" ability to deal with the public as well as understand, remember and carry out complex instruction and a "fair" ability in all other areas (Tr. 162-163). Kehoe testified that the previously-cited jobs could still be performed. (Tr. 222). Therefore, assuming that the vocational factors considered by Kehoe fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error. The ALJ included all of the physical limitations indicated by Dr. Glen Baker, an examining consultant, who opined that Hubbard should be restricted to sedentary level work with no environmental exposures. (Tr. 139). The only limitation indicated by Dr. Thaddis Cox, another examiner, was a need to quit smoking.[1] (Tr. 129). No treating or examining source, including the staff at Knox County Hospital (Tr. 106-126) and Dr. Stephen Lamb (Tr. 130-135) identified the existence of more severe physical

---

[1] In Mullins v. Secretary of Health and Human Services, 836 F.2d 980 (6th Cir. 1987), the court found that in view of a claimant's continued smoking habit, "it was difficult to invision [sic] a severe and environmental restriction imposed by a pulmonary condition." Mullins, 836 F.2d at 985.

6

limitations than those presented to the Vocational expert. Dr. James Ross (Tr. 151) and Dr. Calixto Hernandez (Tr. 153), the non-examining medical reviewers, did not believe the plaintiff suffered from a "severe" physical impairment. Therefore, the ALJ dealt properly with the evidence of record relating to the claimant's physical condition.

The ALJ also dealt properly with the evidence regarding Hubbard's mental condition. The mental factors presented to Kehoe were compatible with the opinion of Psychologist Gary Maryman, an examining source. (Tr. 160-161, 162-163). More severe mental limitations were indicated by Psychologist Reba Moore, another examiner. (Tr. 150). Neither examiner was entitled to superior weight and, so, the ALJ could reasonably rely upon Maryman's opinion over that of the equally-placed Moore. Therefore, the hypothetical question fairly depicted the plaintiff's mental condition.

Hubbard argues that the ALJ erred in concluding that he did not meet the requirements of Section 12.05(C) of the Listing of Impairments concerning mental impairments. This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05(C). The regulations further provide that: "Mental retardation refers to a significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period;.i.e. the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05. Thus, to satisfy the requirements of Section 12.05(C), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical

7

impairment.

In the present case, Hubbard cites the intelligence testing results obtained by Moore on administration of the WAIS-III intelligence test in September of 2003 which included a Verbal IQ score of 68, a Performance IQ score of 70, and a Full Scale IQ score of 66 in support of his claim of meeting a Listing. (Tr. 146). The plaintiff also notes that Norman Hankins, vocational expert, administered the Slosson Intelligence test in July of 2004 and obtained an IQ score of 67. (Tr. 102). The ALJ rejected these scores in favor of those obtained by Maryman in February of 2004. (Tr. 15). These included a Verbal IQ score of 78, a Performance IQ score of 83 and a Full Scale IQ score of 78 on the WAIS-III intelligence test. (Tr. 159).

The Court notes that under the administrative regulations, Hankins, a Doctor of Education (Tr. 104), does not qualify as an "acceptable medical source" whose opinion would be binding upon the ALJ. 20 C.F.R. Section 416.913. Thus, this is a question of Moore versus Maryman.

Hubbard asserts that the higher scores obtained on the WAIS-III by Maryman some five months after Moore administered the same test, are not contradictory but the result of the so called "practice effect." The plaintiff cites the Program Manual Operation System (POMS) Disability Section 24515.055(C) in support of his argument that the "practice effect" was not properly considered. This POMS section indicates that the upward fluctuation in IQ scores to be expected by the "practice effect" would be five or six points. However, the fluctuation in the present action was 10 to 13 points. Furthermore, even if the ALJ should have relied upon Moore's scores instead of those of Maryman, the claimant would still have to demonstrate the required deficits in adaptive behavior also required by the Listing. As noted by the ALJ (Tr. 15), intelligence

testing administered during the developmental time period ranged from 73 to 93, all above mental retardation. (Tr. 98). Therefore, the Court must reject the plaintiff's argument.

Hubbard also argues that the ALJ did not properly evaluate his subjective complaints. In Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986) the Court announced that in evaluating subjective pain complaints, there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. With regard to the plaintiff's physical problems, the ALJ fully took into consideration all of the restrictions suggested by the record. The Court notes that the claimant continued to smoke cigarettes despite his breathing complaints. (Tr. 205). Maryman's findings suggested reasonably good mental functioning. Thus, the objective medical record does not provide support for Hubbard's claim.

Finally, Hubbard asserts that the ALJ erred in rejecting the opinion of Norman Hankins that a significant number of jobs would not be available to one of his age, education and work background if limited to a restricted range of sedentary level work. (Tr. 103). The plaintiff notes that Hankins is a respected vocational expert whose testimony is regularly accepted by the administration. However, his opinion on this issue is contradicted by that of Susan Kehoe who is also a respected vocational expert. The ALJ, in his capacity of fact-finder, could reasonably reject Hankins' opinion in favor of that of Kehoe. Therefore, the Court must reject the claimant's argument.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment

9

motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the _26_ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE